**PROFILE GEAR CORPORATION,**
**Plaintiff–Appellant,**

v.

**FOUNDRY ALLIED INDUSTRIES,**
**INC., Defendant–Appellee.**

No. 90–2236.

United States Court of Appeals,
Seventh Circuit.

Argued May 9, 1991.

Decided July 16, 1991.

Sheldon Davidson, Donald J. Moran, and Joan G. Stevens, Pedersen & Houpt, Chicago, Ill., for plaintiff-appellant.

David Schachman, Miriam I. Pickus, John L. Feder, and Stewart Dolin, Sachnoff & Weaver, Chicago, Ill., for defendant-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

"For a long time courts were reluctant to enter default judgments, and appellate courts were reluctant to sustain those that were entered.... Those times are gone." *Metropolitan Life Insurance Co. v. Estate of Cammon*, 929 F.2d 1220, 1224 (7th Cir. 1991). In the present case, the plaintiff Profile Gear Corporation ("Profile Gear") lied to opposing counsel and to the District Court and repeatedly failed to comply with discovery requests. After four times ordering lesser sanctions against Profile Gear and providing clear warning of what would come next, the District Court entered default judgment under Fed.R.Civ.P. 37(b)(2)(C). Profile Gear appeals, and we affirm.

The record shows an escalating series of sanctions by the District Court in response to Profile Gear's conduct. The story begins with Profile Gear's response to interrogatories that the defendant Foundry Allied Industries, Inc. ("Foundry") served on July 28, 1989. Instead of answering the interrogatories, Profile Gear responded "See Complaint" and "See Documents Produced," which the District Court properly characterized as evasive conduct. Transcript of Proceedings, September 14, 1989, p. 2. The District Court imposed a sanction of $250, and ordered Profile Gear to "respond to all outstanding discovery requests by September 25, 1989." Order, September 14, 1989.

Meanwhile, Profile Gear moved for cross-sanctions. Its motion stated that Foundry had offered to produce certain documents for Profile Gear's Chicago counsel only in Racine, Wisconsin. In fact, this problem had been resolved and the documents offered in Chicago. At a September 19, 1989 hearing, the District Court asked, "You told me in your motion that you have to go to Racine to see the[ ] [documents]. That is not the fact, is it?" To which Profile Gear's counsel answered, "No, no, your Honor." Transcript of Proceedings, September 14, 1989, p. 2. The District Court issued a second sanction of $250 against Profile Gear's counsel "for pursuing this motion when he knew the representations were not true," Order, September 19, 1989. (New counsel represents Profile Gear on appeal).

The District Court issued more substantial sanctions three months later, on January 17, 1990. At this point, Profile Gear had been caught in a clear lie. Profile Gear had responded "none" in answer to requests for documents concerning other disputes involving the contract language at issue in this case. Yet, in depositions, a Profile Gear employee admitted the existence of such a dispute. And when documents were finally produced, they showed that Profile Gear's counsel sent and received letters regarding this dispute just one month before stating that no documents existed. The District Court concluded that "[t]he only plausible explanation for Profile's response that no documents satisfied [the document] requests ... is that Profile and Profile's counsel lied when responding to these requests." Memorandum Opinion and Order, January 17, 1990, p. 6, 1990 WL 7152.

Two other incidents were similar. As of January 17, 1990, Profile Gear admitted receiving at least three quotations for aluminum castings. Profile Gear claimed that these quotations were missing from its files, but offered essentially no explanation for their absence. So too, Profile Gear failed to produce a two page statement that it had asked a former employee to prepare. The statement was mailed to Profile Gear, but Profile Gear's counsel denied receiving it. The District Court concluded that, "[i]n a strict credibility contest, [Profile Gear's counsel] would not prevail over the reliability of the United States mail." *Id.*, pp. 8–9.

In addition, Profile Gear refused to disclose the minutes of meetings of its own board of directors because "they are not within the immediate control of Profile's officers or counsel," and it refused to disclose monthly and quarterly financial reports because they concerned a "unique defense" that was otherwise unspecified. *Id.*, p. 8. Finally, Profile Gear had still failed to produce substantial documents in response to Foundry's document request, despite the District Court's prior order that

all documents were to be produced by September 25, 1989.

This conduct led to a third set of sanctions. The District Court ordered Profile Gear to pay various of Foundry's attorneys' fees and "to immediately engage in a thorough search for all documents described in Foundry's document request that remain undisclosed.... These documents shall be produced by February 1, 1990." Memorandum Opinion and Order, January 17, 1990, pp. 9–10. The District Court also warned, "Should Profile fail to fully comply with this order, the court will determine whether to enter [default] judgment in favor of Foundry pursuant to Fed.R.Civ.P. 37(d)." *Id.*, at p. 10.

Instead of complying, Profile Gear for the first time claimed that it had 100,000 documents to produce, and that this volume of material would take 30 days to assemble. *See* Memorandum Opinion and Order, February 23, 1990, p. 5, 1990 WL 19878. This failure by Profile Gear to meet another firm deadline led to a *fourth* sanction. Profile Gear had a negative net worth and continuing losses. To prevent further delay from destroying the value of any judgment against Profile Gear, the District Court ordered Profile Gear to post a bond by March 1, 1990 in the amount of Foundry's counterclaim, and warned that a default judgment would be entered if the bond was not posted. *Id.*, p. 7.

Profile Gear argues that it would have complied with the District Court's order to post bond if its lawyers had explained that a supersedeas bond in an even greater amount would be necessary for it to file the present appeal. According to Profile, "had Profile been advised that the question of the bond was not whether it would be posted, but when, Profile would have promptly sought to comply with the February 23 order." Plaintiff's Motion and Memorandum to Vacate and Set Aside Default Judgment, June 7, 1990, ¶ 10; *see id.*, ¶¶ 6, 9. This argument concedes that Profile Gear could have complied with the District Court's bond requirement. More tellingly, this argument concedes that Profile Gear knew of the District Court's order

and intentionally disregarded it. In essence, Profile Gear claims that it inaccurately perceived compliance with the District Court's order to be against its best interest. This is no argument at all. Profile Gear's duty was to comply with the order, regardless of how it weighed the costs and benefits. In any event, the District Court's deadline for posting the bond came, was extended, and finally passed. On March 30, 1990, the District Court entered default judgment against Profile Gear.

Profile Gear disputes little of this sequence of events. It claims that it reasonably interpreted the language in certain orders in its favor and that the scope of the materials that it was to produce kept expanding. Even giving Profile Gear the benefit of the doubt, Profile Gear cannot dispute that it produced many documents months late and only after repeated prodding; that two sets of documents are missing under questionable circumstances; that Profile Gear was evasive and at times dishonest in its responses to discovery; and that Profile Gear blames its own lawyers for its failure to comply with the last chance that the District Court offered to avoid default.

■ Of course, Profile Gear is not entitled to the benefit of the doubt; rather it must show that the District Court's factual findings were clearly erroneous and that the sanctions were an abuse of discretion. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam) (reversing appellate court for failing to apply abuse of discretion standard to district court's entry of default); *United States v. Di Mucci*, 879 F.2d 1488, 1494 (7th Cir.1989) (applying the "clearly erroneous" standard to the district court's factual finding that a party failed to comply with discovery requirements and affirming entry of default judgment).

■ The District Court's findings of intentional delay and repeated dishonesty are adequately supported. After imposing four lesser sanctions and providing clear warning that default was imminent, the

District Court did not abuse its discretion in entering a default judgment. For comparison, we note that this Court has stated that a district court need not impose *any* lesser sanctions prior to entering the sanction of default judgment. *See, e.g., Hal Commodity Cycles Management Co. v. Kirsh,* 825 F.2d 1136, 1139 (7th Cir.1987) ("A district court is not required to fire a warning shot" prior to issuing a default judgment as a sanction). And even absent a finding of dishonesty, we have affirmed numerous default judgments due to dilatory tactics. *See, e.g., Metropolitan Life Ins. Co. v. Estate of Cammon,* 929 F.2d 1220, 1223–24 (7th Cir.1991); *Anderson v. United Parcel Service,* 915 F.2d 313, 314–15 (7th Cir.1990); *Patterson v. Coca–Cola Bottling Co.,* 852 F.2d 280, 284–85 (7th Cir. 1988). For these reasons, the District Court's judgment is AFFIRMED.