USCA1 Opinion

 

 April 1, 1993 [Opinion reissued as published.] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2151 CATHERINE M. JONES, ET AL., Plaintiffs, Appellants, v. WINNEPESAUKEE REALTY, ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Norman H. Stahl, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ David A. Jones for appellants. ______________ _________________________ March 12, 1993 _________________________ SELYA, Circuit Judge. In this appeal, a family of SELYA, Circuit Judge. ______________ disappointed plaintiffs asks us to overturn the district court's entry of judgment on a counterclaim and to annul awards covering attorneys' fees and sanctions. Finding no cognizable error, we affirm. I. BACKGROUND I. BACKGROUND In early 1989, Catherine M. Jones and her son, Alexander T. Jones, filed suit to recover amounts allegedly owed by Reid S. Littlefield in consequence of Littlefield's agreement to rent a vacation home in Gilford, New Hampshire. Littlefield, through counsel, answered the complaint and counterclaimed for breach of contract, assault, and trespass.1 In response to a pretrial order, the two original plaintiffs filed an amended complaint in which they joined David A. Jones, an owner of the property and a signatory to the lease, as a co-plaintiff.2 Soon thereafter, plaintiffs' attorney moved to withdraw from the case. On January 2, 1990, the magistrate-judge allowed the motion. From that point forward, David Jones served as his own counsel and at times represented his co-plaintiffs. ____________________ 1Appellants' suit named a myriad of other defendants. In the present posture of the case, no useful purpose would be served by furnishing details relevant to these persons and firms. 2David Jones is Catherine's husband and Alexander's father. He is also an attorney. He represents the appellants in connection with this appeal. We note in passing that, although Alexander Jones is listed in the notice of appeal, brief, and other documents as an appellant, he is seemingly unaffected by any of the orders under review. We, therefore, ignore his presence and treat Catherine and David Jones as if they were the sole appellants. 2 In April 1990, appellants withdrew most of the causes of action originally asserted against Littlefield. Buoyed by this concession, Littlefield moved to dismiss on the ground that there was no longer a sufficient amount in controversy. Although the court denied Littlefield's motion and gave appellants permission to supplement their pleadings, appellants made no effort to cure the perceived deficiency.3 On August 27, 1990, the court dismissed their complaint. Claiming that they had never received notice of the opportunity to amend their pleadings, and denying (despite a clear record to the contrary) that they had withdrawn their other causes of action, appellants sought and obtained the district court's agreement to reconsider. The court withheld entry of judgment and set a reconsideration hearing for January 7, 1991. The appellants did not attend. Instead, they notified the court a week beforehand that Catherine Jones's medical condition precluded travel from Pennsylvania to New Hampshire. The court continued the hearing until June 24, 1991. On that date, only David Jones appeared, claiming that a daughter's sudden illness prevented his wife's attendance. The court rescheduled the hearing for April 6, 1992, but warned appellants that their failure to attend on the new date would result in dismissal of the complaint and, possibly, additional sanctions. ____________________ 3We use the term "perceived deficiency" advisedly. As the district court recognized, the amount in controversy, for purposes of federal diversity jurisdiction, is determined as of the time the case is first commenced. See Klepper v. First Am. ___ _______ _________ Bank, 916 F.2d 337, 340 (6th Cir. 1990). ____ 3 Notwithstanding the court's admonition, no plaintiff appeared on April 6. Appellants did not communicate directly with the court but sent a facsimile transmittal to their former attorney explaining that illness supposedly prevented them from attending. Its patience exhausted, the district court acted on its earlier dismissal of the complaint and entered judgment. On May 5, 1992, the court denied appellants' motion for reconsideration and, at the same time, granted Littlefield's motion for entry of a default in respect to the counterclaim. The court fixed June 3, 1992 for a dual-purpose hearing (i) to determine damages on the counterclaim, see Fed. R. Civ. P. ___ 55(b)(2), (d), and (ii) to consider the possible imposition of sanctions. Although appellants did not show up for the June 3 hearing, the court received evidence and reserved decision. On September 8, 1992, the court awarded Littlefield $2,000 on the counterclaim's assault count, dismissed the remaining counts of the counterclaim (finding Littlefield's proof of damages inadequate), awarded Littlefield attorneys' fees in the amount of $6,338.80, and fined Mr. and Mrs. Jones $5,000 apiece for their consistent failure to attend pretrial hearings and their bad faith in conducting the litigation. This appeal followed. II. DISCUSSION II. DISCUSSION Having studied the record, we conclude that none of appellants' contentions merit relief from the various orders entered below. In explaining why this is so, we comment briefly 4 on four of appellants' principal points. A. The Matter of Status. A. The Matter of Status. ____________________ Throughout most of this litigation, David Jones has characterized himself as an "involuntary plaintiff." On appeal, he maintains this characterization, arguing that, as such, he cannot be forced to pay sanctions. We do not think that Jones's point is properly preserved. To be sure, Jones is an involuntary plaintiff in the sense that, on August 28, 1989, the magistrate-judge ordered the two original plaintiffs to join him. (Given his relationship to the property and the lease, he was a necessary, perhaps an indispensable, party, see Fed. R. Civ. P. 19.) However, ___ subsequent to joinder, Jones made several personal appearances in the case and also made a number of written submissions. While he styled himself at various times as an "involuntary plaintiff," he never asked the district court to drop him as a party. That ends the matter. In this circuit, "it is a party's first obligation to seek any relief that might fairly have been thought available in the district court before seeking it on appeal." Beaulieu v. ________ United States Internal Revenue Serv., 865 F.2d 1351, 1352 (1st _____________________________________ Cir. 1989); accord Dartmouth Rev. v. Dartmouth College, 889 F.2d ______ ______________ _________________ 13, 22 (1st Cir. 1989); Aoude v. Mobil Oil Corp., 862 F.2d 890, _____ _______________ 896 (1st Cir. 1988). Thus, here, neither the question of whether it was error for the magistrate-judge to direct that David Jones be joined as a plaintiff, nor the related question of whether 5 Jones participated in the suit under unfair compulsion, is before us.4 B. The Assessment of Damages. B. The Assessment of Damages. _____________________________ We next consider Catherine Jones's contention that the district court improperly assessed damages against her in the sum of $2,000. The record discloses that, after entering a default on the counterclaims, the district court scheduled a proof-of- claim hearing for June 3, 1992, directed Littlefield to submit a full accounting of his damages in advance, and directed appellants to respond to this submission before the hearing. Littlefield filed a written statement of damages and a supporting memorandum. The appellants filed nothing. They also boycotted the June 3 hearing. In contrast, Littlefield appeared and testified. Based upon the evidence before it, the district court awarded Littlefield $2,000 in damages against Catherine Jones on the assault counterclaim. Once the entry of a default establishes the fact of ____ damage, the trial judge, sitting without a jury in a Rule 55 proceeding, has considerable latitude in determining the amount ______ of damages. See Sony Corp. v. Elm State Elecs., Inc., 800 F.2d ___ ___________ ______________________ 317, 321 (2d Cir. 1986) (reviewing assessment of damages following entry of default for abuse of discretion). This standard dictates the result in the present situation. The ____________________ 4Moreover, Jones seems to have been perfectly willing to reap the benefits of party-plaintiff status. In one motion that he signed, Jones deemed himself "entitled to all the rights the statutes and/or case law afford to any Party, voluntary or involuntary." He cannot, of course, have it both ways. 6 district judge determined that, notwithstanding the default, he should not rely merely on unverified allegations to determine an appropriate award of damages in a case not involving a liquidated amount, see, e.g., Dundee Cement Co. v. Howard Pipe & Concrete ___ ____ _________________ _______________________ Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); Byrd v. Keene ____________ ____ _____ Corp., 104 F.R.D. 10, 12 (E.D. Pa. 1984), and, therefore, _____ convened an evidentiary hearing to establish the quantum of the award. See Al-Kazemi v. General Acceptance & Inv. Corp., 633 F. ___ _________ ________________________________ Supp. 540, 542 (D.D.C. 1986); Systems Indus., Inc. v. Han, 105 ____________________ ___ F.R.D. 72, 74-75 (E.D. Pa. 1985). Absent a sum certain, the district court, in arriving at the award, could do no more than rely on the evidence before it. Through no fault of either the court or the counterclaimant, the evidence produced at the hearing consisted mainly of Littlefield's statement of damages and sworn testimony. Reviewing this evidence to the extent possible,5 we perceive no abuse of discretion in a $2,000 award. Littlefield stated, by affidavit, that Catherine Jones's threats of violence caused him to experience fear of physical injury and mental distress. Non- economic damages for apprehension, emotional distress, and psychic injury are not easily computed and, therefore, determinations of this type are extremely fact-sensitive. See, ___ ____________________ 5Appellants have prosecuted this appeal without procuring a transcript of the June 3 hearing. They must, therefore, bear the onus of any uncertainties arising out of an incomplete record on appeal. See Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987); ___ ____ _____ United States v. One Motor Yacht Named Mercury, 527 F.2d 1112, ______________ ______________________________ 1113-14 (1st Cir. 1975). 7 e.g., Wagenmann v. Adams, 829 F.2d 196, 216 (1st Cir. 1987) ____ _________ _____ (observing that "there is no scientific formula or measuring device which can be applied to place a precise dollar value on matters such as . . . fright, anxiety, . . . or emotional scarring"). Bearing in mind the incomplete record, see supra ___ _____ note 5, the nature of the alleged damages, the modest amount of the award, the appellants' failure to submit any information whatever at or before the proof-of-claim hearing,6 and the deferential standard of review, we are powerless to undo the award. C. The Award of Counsel Fees. C. The Award of Counsel Fees. _________________________ It is beyond serious dispute that a federal court possesses inherent power to shift attorneys' fees when parties conduct litigation in bad faith. See Roadway Express, Inc. v. ___ ______________________ Piper, 447 U.S. 752, 765-66 (1980) (recognizing "bad faith" _____ exception to general rule that federal courts cannot ordinarily make fee-shifting awards); Stefan v. Laurenitis, 889 F.2d 363, ______ __________ 370 (1st Cir. 1989) (discussing district court's inherent power under Roadway doctrine); Peltier v. Peltier, 548 F.2d 1083, 1084 _______ _______ _______ (1st Cir. 1977) (affirming award of attorneys' fees); see also ___ ____ Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2133 (1991). This ________ ____________ power should be used sparingly and reserved for egregious circumstances. ____________________ 6This eschewal is an appropriate consideration on appellate review of a damage award. See, e.g., Knightsbridge Mktg. Servs., ___ ____ ___________________________ Inc. v. Promociones Y Proyectos, 728 F.2d 572, 575 (1st Cir. ____ ________________________ 1984). 8 The district court, citing the "general non-cooperative and often contentious manner" in which appellants conducted the litigation, as well as offering numerous examples of untoward practice,7 determined that the appellants had surpassed the threshold of egregiousness. The court made a specific, meticulously detailed finding of bad faith and exercised its discretion to shift the burden of Littlefield's fees to the appellants. We have scrutinized the record on appeal and are satisfied that, although the court's conclusion of bad faith might not be inevitable, it is plainly sustainable. When, as in this instance, there are two plausible views of the record, the trial court's adoption of one such view cannot constitute clear error. See United States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. ___ _____________ _______ 1992). Once the court made a supportable finding of bad faith, it then properly exercised its discretion and shifted the fees. It considered the essential factor (bad faith), did not add to the mix any improper factors, and made a plausible judgment call in weighing the use of its inherent powers. No more was exigible. See Independent Oil & Chem. Workers, Inc. v. Procter & ___ _____________________________________ _________ Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988). In this age _______________ of burgeoning litigation expense and overcrowded dockets, neither a sued defendant nor a busy trial judge should have to tolerate litigants' repeated efforts to stall a case, harass other ____________________ 7We have examined the pleadings described in the district court's memorandum order. Many of them are patently frivolous. Others seem to be riddled with demonstrably false allegations. 9 participants, and frustrate the operation of the justice system. See, e.g., Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., ___ ____ ___________________ ______________________________ 771 F.2d 5, 12 (1st Cir. 1985), cert. denied, 475 U.S. 1018 _____ ______ (1986); Peltier, 548 F.2d at 1084. The court appropriately _______ invoked its inherent power.8 D. The Imposition of Sanctions. D. The Imposition of Sanctions. ___________________________ We discern no abuse of discretion in the lower court's imposition of monetary sanctions on Catherine Jones and David Jones, separately, pursuant to its authority under Fed. R. Civ. P. 16(f).9 Trial judges enjoy great latitude in carrying out case- management functions. In re San Juan Dupont Plaza Hotel Fire _________________________________________ Litig., 859 F.2d 1007, 1019 (1st Cir. 1988). When confronted ______ with a party's defiance of its management authority, a district court is necessarily vested with considerable discretion in deciding whether to impose sanctions on that party, and, if so, ____________________ 8In its fee-shifting order, the district court relied, in the alternative, on its power under state law. Because we find that the court had inherent power to award counsel fees, see ___ supra, we need not reach the question of whether, in this _____ diversity case, New Hampshire law also allowed for fee-shifting. ____ See Chambers, 111 S. Ct. at 2136-38 (explaining that fee-shifting ___ ________ under a federal court's inherent power to redress bad faith conduct is a matter of vindicating judicial authority, not a matter of substantive remedy, and is, therefore, permissible in a diversity case whether or not authorized by state law). 9The rule authorizes a district court to impose sanctions "as are just" against a party for, inter alia, failure to obey a _____ ____ scheduling or pretrial order, or for failure to appear at a scheduling or pretrial conference. Fed. R. Civ. P. 16(f). Because we conclude that the district court properly imposed monetary sanctions under Rule 16(f), we take no view of whether the sanctions were likewise permissible in the exercise of the court's inherent power. 10 in determining what form the sanctions should take. See Media ___ _____ Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, _________________________ ___________________ 1238 (1st Cir. 1991). Because sanctions are well within the heartland of the district court's realm, we review a district court's imposition of them only for manifest abuse of discretion. See Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075 ___ ________________ ____________________ (1st Cir. 1990); Brockton Sav. Bank, 771 F.2d at 12. Although __________________ such a deferential approach does not confer carte blanche power _____ _______ to the district court, see, e.g., Navarro-Ayala v. Nunez, 968 ___ ____ _____________ _____ F.2d 1421, 1427 (1st Cir. 1992); Figueroa-Rodriguez v. Lopez- __________________ ______ Rivera, 878 F.2d 1478, 1491 (1st Cir. 1988), litigants ______ "protesting an order in respect to sanctions bear[] a formidable burden in attempting to convince the court of appeals that the lower court erred." United States v. One 1987 BMW 325, ___ F.2d _____________ ________________ ___, ___ (1st Cir. 1993) [No. 92-1827, slip op. at 5]; accord ______ Spiller v. U.S.V. Lab., Inc., 842 F.2d 535, 537 (1st Cir. 1988). _______ _________________ The record supports an assessment that, throughout the course of this litigation, appellants regularly defied court orders directing them to attend pretrial hearings, e.g., both ____ Catherine and David Jones failed to appear at hearings scheduled for January 7, 1991, April 6, 1992, and June 3, 1992, and Catherine Jones also failed to appear at a hearing scheduled for June 24, 1991. Although appellants offered excuses for these episodes, they offered no irresistibly convincing reasons. To give one illustration, appellants tried to explain their absences on April 6 and June 3, 1992, by claiming that, despite all 11 indications to the contrary, they did not receive notice of scheduled hearings. The district court disbelieved this excuse. It was entitled to do so. See, e.g., Spiller, 842 F.2d at 537 ___ ____ _______ (noting plaintiff's "history of foot-dragging" and rejecting similar excuse in affirming dismissal of plaintiff's action for failure to comply with court orders). To give another illustration, appellants continually claimed illness (theirs or some other family member's) but the medical records they eventually proffered were neither timely filed nor served, as required, on opposing counsel; moreover, the records were by and large too vague to satisfy appellants' burden. Given this checkered pattern, and given, further, that the district court warned appellants on more than one occasion about the likely consequences of failure to attend, we find that the court acted within its discretion in levying sanctions under Rule 16(f). See ___ Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit ______________________________________________________ ______ Int'l, Inc., ___ F.2d ___, ___ (1st Cir. 1993) [No. 92-1458, slip ___________ op. at 12-14] (holding that a counterclaimant's unexcused failure to attend two pretrial conferences after the court had threatened sanctions for failure to attend warranted dismissal of the counterclaim under Rule 16(f)); see also Thibeault v. Square D ___ ____ _________ ________ Co., 960 F.2d 239, 246 (1st Cir. 1992) (noting that totality of ___ circumstances for sanction purposes could include events in other litigation). We likewise conclude that the sanctions are not excessive. On this point, the district court, after citing 12 appellants' defiance of two orders directing them to attend pretrial hearings and noting their chronicled propensity to engage in similar behavior in earlier proceedings, stated that the sanctions it chose were fashioned to "deter plaintiffs, and other litigants, from engaging in the course of conduct displayed throughout this litigation."10 Deterrence is a widely recognized basis for determining the amount of a monetary sanction. See Media Duplication, 928 F.2d at 1242 (approving use ___ _________________ of monetary sanctions under Rule 16(f) as a means of deterring an attorney's neglect of scheduled proceedings); see also Navarro- ___ ____ ________ Ayala, 968 F.2d at 1426-27 (discussing deterrence as a basis for _____ gauging monetary sanctions under Rule 11). Having reviewed the district court's explanation of why it chose the precise sanction amounts and finding that the amounts are "within the minimum range reasonably required to deter the abusive behavior," id. at ___ 1427, we are constrained to conclude that the court below did not overspill the banks of its discretion under Rule 16(f). III. CONCLUSION III. CONCLUSION We need go no further.11 In this case, the district judge exhibited commendable patience. In the end, however, he found that appellants consistently defied explicit court orders directing them to attend pretrial hearings hearings ____________________ 10In line with the court's goal of deterrence, the sanctions are to be paid into the registry of the district court. 11Appellants waived many other assignments of error at oral argument. The rest are utterly lacking in merit and need not be discussed. 13 necessitated, in the main, by their own absences and requests for reconsideration of earlier rulings. The judge also found (again, supportably) that appellants pelted the court with a torrent of idle motions and submissions, many containing scurrilous allegations, serving no apparent purpose other than to harass the court, burden the defendant, and delay a resolution of the case. Given what the nisi prius roll reveals, together with the ____ _____ district court's record-rooted finding that appellants blatantly disregarded the federal courts' authority to manage litigation through reasonable means, there is no principled basis for vacating the rulings complained of in this appeal. Affirmed. ________ 14