Hugh **DOWNS**, in his individual capacity and in his capacity as representative of the Estate of Joanne Downs, and the Estate of Joanne Downs, Plaintiffs–Appellees,

v.

Ruth **WESTPHAL** and Michael R. Gulmetti, as trustee of Trust No. 45, jointly and individually, Defendants–Appellants.

Nos. 95–2289, 95–2547.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1995.

Decided March 22, 1996.

Preston F. Henry (argued), Douglas G. Swift, Winamac, IN, for plaintiffs-appellees.

Frank J. Gagliardi (argued), Bartlett, IL, for defendant-appellant.

Before MANION, ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This case comes to us as the result of a long, drawn-out family feud. Our first step, then, is to meet the families. It's not always easy to keep them straight. Most of the family members have been married more than once, the women's names keep changing, and at one point two of the sisters involved in this dispute were named Ruth Westphal. On top of that, the three parties to this appeal are all proceeding both individually and in some other capacity. Hugh Downs is the representative of the estate of his deceased wife Joanne. Michael Gulmetti is trustee of "Trust No. 45." Ruth Westphal

is trustee of "Trust 19."[1] We will refer to all parties by the names they are currently using, regardless of the name used at the time of any specific event under discussion. To avoid confusion, we will refer to each of the two Ruths involved in the case—Ruth Westphal and Ruth Bickhaus—by their full names.

Joanne Downs died on October 17, 1991. Her estate, as we just noted, is represented by Hugh Downs. Joanne Downs and Ruth Westphal, one of the appellants in this case, were the daughters, by different women, of R.J. Ditto. Joanne was raised by R.J. Ditto and his wife Loretta. Ruth Westphal grew up with her mother Helen Antrim and Helen's husband Mr. Westphal. Mr. Westphal, the biological father of Ruth Bickhaus and Harold Westphal, adopted Helen's Ruth, and Helen adopted her husband's two children, Ruth and Harold. Michael Gulmetti is Ruth Westphal's son. In 1985, Helen Antrim gave a piece of farmland in Pulaski County, Indiana, to Ruth, Ruth, and Harold as tenants in common. Each of the three children was given an undivided interest in the land: 39.7 percent to each of the Ruths, and 20.6 percent to Harold. In its narrowest sense, the dispute before us concerns the efforts of Hugh Downs to foreclose on this piece of farmland.

The events leading up to this case began around the time of R.J. Ditto's death. What exactly happened is not entirely clear from the record, but it seems there was a rather heated dispute, both in and out of the courtroom, over Mr. Ditto's estate. This dispute continued for some time, and eventually Joanne and Hugh Downs sued Ruth Westphal for defamation. The original defamation complaint was filed over ten years ago in Arizona state court. At that point, Ruth Westphal began to adopt the sort of tactics that have characterized much of her behavior throughout this unnecessarily protracted litigation. At first she seemed to believe that if she just ignored the complaint against her, it would simply go away. For a while, she was right. The case was inactive until 1988, when Hugh Downs filed a motion for a de-

fault judgment. In 1991, Ruth Westphal had still not made an appearance in the case, and the trial court in Arizona entered a default judgment against her, granting Joanne and Hugh Downs $100,000 in compensatory damages plus attorney's fees and costs.

Ruth Westphal did not appeal the default judgment, which was entered on May 10, 1991. Soon after, however, she sprang into action. She filed a motion to vacate the default judgment, which was denied. She then filed a motion to reconsider, also denied. She appealed the denial of the motion to reconsider, and the Arizona Court of Appeals affirmed. *Westphal v. Downs, et al.,* No. 2 CA–CV 92–0132 (Ariz.Ct.App. Dec. 8, 1992). She sought review in the Arizona Supreme Court but her petition for review was denied. *Westphal v. Downs, et al.,* No. CV0028–PR (Ariz. June 15, 1993).

Throughout the Arizona proceedings, Ruth Westphal insisted that she never received service of process, that she never lived at the address to which the summons and complaint were sent, and that she first learned of the defamation suit after the default judgment was entered. The Arizona court rejected these assertions, finding that Ruth Westphal lied about not having lived at the address in question, that she willfully avoided service of process, and that valid service had nonetheless taken place. While all of this was going on in the Arizona courts, Ruth Westphal transferred her 39.7 percent interest in the Pulaski County property first to herself as trustee for "Trust No. 19," then to her son Michael Gulmetti as trustee for "Trust No. 45."

With the Arizona judgment in his favor in hand, Hugh Downs sought foreclosure of Ruth Westphal's interest in the Indiana farmland. He filed a two-count complaint in Pulaski County, Indiana, naming Ruth Westphal and Michael Gulmetti as defendants. In addition to the foreclosure count, Downs sought to set aside what he characterized as the fraudulent conveyance of the property from Ruth Westphal to her son. Because Ruth Bickhaus and Harold Westphal held undivided interests in the land, they were

---

**1.** We use quotes here because it has never been shown that either of these "trusts" really exist.

In fact there is considerable evidence to the contrary.

named as additional defendants. The complaint was later amended to include Pulaski County as a defendant due to the county's claim against the land for back taxes. Ruth Westphal removed the case to the United States District Court for the Northern District of Indiana, invoking the court's diversity jurisdiction.

Once in federal court, Ruth Westphal and Michael Gulmetti embarked on a course of conduct that can only be described as abusive. They committed a catalog of discovery violations: failure to respond to interrogatories; failure on two occasions to appear for scheduled depositions; and failure to make mandatory initial discovery disclosures. They violated court orders directing them to comply with reasonable discovery requests and requirements. They failed to appear for scheduled pretrial conferences. The attitude behind these actions is perhaps best summed up in Ruth Westphal's own words. In a letter to the court, she declared that neither "I—nor will my son, Michael Gulmetti, appear in Judge Miller's courtroom on November 28, 1994 or at any other time because it will be an exercise in futility . . . I will never submit to the jurisdiction of the United States Court in South Bend, IN . . . And, of course, there will be no November 28, 1994 hearing, or on any other date." [2] As a result of these discovery violations, the district court entered a series of progressively stronger sanctions against Michael Gulmetti, individually and as trustee, and against Ruth Westphal as trustee. Ruth Westphal managed to avoid being sanctioned individually because she filed for bankruptcy, and so was protected by the automatic stay in bankruptcy at the time. That filing was later found by the bankruptcy judge to have been made in bad faith in "an attempt to create a new forum for Ruth Westphal to vent her animosity towards Hugh Downs." See order of the United States Bankruptcy Court for the Northern District of Illinois, Judge Richard N. DeGunther, Dec. 27, 1994. The automatic stay was annulled back to the date it was entered.

Ruth Westphal also did her best to ensure that her codefendants Ruth Bickhaus and Harold Westphal remained unaware of the lawsuit as long as possible. When they did learn about the foreclosure action on their common land, Ruth Westphal encouraged them to be as uncooperative as possible. On one occasion, she asked them to get phony letters from their doctors saying that they were too ill to participate in depositions or other court proceedings. As the district court pointed out, this request was particularly disturbing in light of the fact that Ruth Westphal had at one point been excused from attending her own deposition on the grounds that it might endanger her health. Later, she wrote her codefendants a letter which describes her tactics quite well.

> No matter what you may receive in the mail, by fax, or telephone you must not answer any questions. You are not required to do anything about this case. Please do not hire a lawyer. . . . [Y]ou have no need to be involved. Contrary to what anyone may say. Not the opposition lawyer, Preston Henry, or his associates, or the court, or the judge.

Ruth Westphal and Michael Gulmetti continued to flagrantly violate discovery rules and court orders despite lesser sanctions and clear warnings. The district court eventually entered a default judgment against Michael Gulmetti as individual and trustee, and against Ruth Westphal as trustee. After Ruth Westphal's bankruptcy filing was dismissed and the stay annulled, the district court entered a default judgment against her in her individual capacity as well. Ruth Westphal and Michael Gulmetti now appeal the default judgments against them.

Ruth Westphal and Michael Gulmetti raise two issues on appeal. Their first argument is jurisdictional. They argue that the district court lacked subject matter jurisdiction over this case for two reasons: because the Ari-

---

**2.** While Ruth Westphal refers to a "hearing" in her letter, November 28, 1994, was the scheduled date for trial of this case. When both Ruth Westphal and Michael Gulmetti failed to show up for the final pretrial conference on November 18, 1994, the trial was canceled. A hearing was then scheduled for that date to determine the amount of the judgment and sanctions. Final judgment was postponed in order to give the parties a chance to submit evidence concerning damages and to address bankruptcy issues still undecided at that time.

zona default judgment was "void"; and because Hugh Downs' complaint in the foreclosure proceedings failed to invoke federal jurisdiction. The other issue the appellants raise is that the district court abused its discretion when it entered a default judgment against them. The default judgment was an excessive sanction, they argue, because they were proceeding pro se, because there was no showing of willfulness or bad faith, and because they had a meritorious defense to the claim.

The argument that the district court lacked subject matter jurisdiction because Hugh Downs failed to invoke it in his complaint is just plain frivolous. It conveniently ignores the facts—Mr. Downs filed his complaint in state court, and the appellants themselves alleged the elements of federal diversity jurisdiction in their notice of removal.

■ The other jurisdictional argument is a bit more interesting, but is ultimately equally unsuccessful. Ruth Westphal and Michael Gulmetti claim that the default judgment entered against them by the Arizona court is invalid. Without that judgment, they argue, the federal district court lacked subject matter jurisdiction over the case. The appellants are right about one thing: without a valid underlying judgment, Hugh Downs has no case. And while the issue in that event would be less one of subject matter jurisdiction than one of standing, we need not quibble over the details of this argument because the validity of the Arizona judgment is not open to challenge. It has been upheld by the appellate courts of Arizona. The highest court of that state has declined review. In order for this argument to succeed, the district court would have to review the Arizona judgment and find that the Arizona courts had erred. Specifically, the district court would have had to review the Arizona court's findings, implicit and explicit, that valid service of process had taken place, that the Arizona statute of limitations was satisfied, and that the court had jurisdiction over the parties and over the subject matter.

■ The appellants' argument that the district court's decision must be reversed because the Arizona judgment was invalid cannot succeed. The federal district court was without capacity to declare the Arizona judgment invalid or void. Nor do we have authority to rule on the question of whether or not the Arizona default judgment was properly entered. The Arizona courts said it was, and we can only accept that decision. The *Rooker–Feldman* doctrine makes it clear that the decisions of state courts in civil litigation may not be reviewed by the lower federal courts. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Levin v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois*, 74 F.3d 763 (7th Cir.1996) ("The *Rooker–Feldman* doctrine dictates that federal courts lack jurisdiction to review decisions of state courts"). "Inferior federal judges lack jurisdiction to review the judgments of state courts, which are open to question, if at all, only in the Supreme Court of the United States under 28 U.S.C. § 1257." *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995). An argument such as the one before us, which requires a federal court other than the Supreme Court to review a state court judgment must fail. Ruth Westphal does not seem to understand that the Arizona defamation case is over. She wants to try that case now, on its merits, years after it has been decided by the Arizona courts. She had the opportunity to litigate the merits of the defamation claim in 1985. She failed to do so then, and cannot try that case now in federal court.

The final argument presented by Ruth Westphal and Michael Gulmetti is that the district court abused its discretion by entering summary judgment against them. Federal Rule of Civil Procedure 37(b) specifically authorizes the use of default judgment as a discovery sanction. The rule provides that when a party

(2) ... fails to obey an order ... or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ... (C) An order striking out pleadings or parts

thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

The decision to enter a default judgment as a sanction for violation of a discovery order is within the sound discretion of the district court. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). That discretion is abused, however, where a default judgment is entered without a showing of willfulness, bad faith or fault on the part of the defaulted party. *Patterson v. Coca–Cola Bottling Co.,* 852 F.2d 280, 283 (7th Cir.1988).

We need address the district court's finding of fault, bad faith, or willfulness on the part of Michael Gulmetti and Ruth Westphal only briefly. This finding, necessary to support the entry of default judgment, is a factual determination we review under the "clearly erroneous" standard. *Profile Gear Corp. v. Foundry Allied Ind., Inc.,* 937 F.2d 351 (7th Cir.1991). Under any standard of review, however, we would have to conclude that the evidence of Ruth Westphal's bad faith throughout the course of this dispute is overwhelming. We need only look to her own writings to discover ample support for the district court's finding. The same is true of Michael Gulmetti. His writings to the court and to others show a level of hostility and untruthfulness rivaled only by his mother's.

The appellants argue that because they were proceeding pro se at the time the default judgment was entered against them, the district court should have treated them more "gently." Even in a case like this one, where the appellants were represented by counsel Larry Evans up until July 1, 1994, and began to be represented by bankruptcy counsel Bernard Natale at the latest on August 5, 1994, the district court had a duty to recognize the pro se status of the appellants, and treat them accordingly. But being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders. It does not give the pro se litigant the discretion to choose which of the court's rules and orders it will follow, and which it will wilfully disregard. "Although civil litigants who represent themselves ("pro se") benefit from various procedural protections not otherwise afforded to the attorney-represented litigant ... pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Jones v. Phipps,* 39 F.3d 158, 163 (7th Cir.1994).

The appellants did not disobey court orders because of innocent misunderstanding or lack of familiarity with the law. Their communications with the court make clear that they understood those orders and chose to defy them. The district court more than fulfilled its duty to Ruth Westphal and Michael Gulmetti as pro se litigants. The court warned them that more severe sanctions would be forthcoming, even though the "district court is not required to fire a warning shot" before it defaults an offending party. *Hal Commodity Cycles Management Co. v. Kirsh,* 825 F.2d 1136, 1139 (7th Cir.1987). The court explained that its previous efforts to force the appellants to comply had failed, and that there was "no reason to believe that further orders would be obeyed." The appellants were given numerous opportunities to correct their sanctionable conduct and comply with discovery rules and court orders. That they refused to take advantage of these opportunities does not render the district court's conduct erroneous.

On the contrary, the district court demonstrated remarkable patience in dealing with this troupe of unruly litigants. Ruth Westphal and her son worked overtime to try that patience, and they went too far. They have no one but themselves to blame for their present predicament. We cannot, and will not, undo what they have done. As you sow, so shall you reap.

AFFIRMED.