<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 UNITED STATES COURT OF APPEALS
                     FOR THE FIRST CIRCUIT

                   _________________________

No. 97-1757

                 MARIA M. ROSARIO-DIAZ, ET AL.,
                     Plaintiffs, Appellees,

                               v.

                         JOSE GONZALEZ,
                     Defendant, Appellant.
                   _________________________

No. 97-1756

                 MARIA M. ROSARIO-DIAZ, ET AL.,
                     Plaintiffs, Appellees,

                               v.

                      DOMINGO DIAZ ORTIZ,
                     Defendant, Appellant.
                   _________________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Hector M. Laffitte, U.S. District Judge]
                   _________________________

                             Before

                     Selya, Circuit Judge,
                Campbell, Senior Circuit Judge,
                   and Stahl, Circuit Judge.

                   _________________________

    Gustavo N. Gelp, Jr., with whom Ramonita Perez de Gotay, John
M. Garca, and Yvette de Luna were on consolidated brief, for
appellants.
    Peter Berkowitz, with whom Roberto Roldn Burgos was on brief,
for appellees.

                   _________________________

                        April 1, 1998

                   _________________________

 SELYA, Circuit Judge. In this action, brought pursuant to
42 U.S.C.  1983 (1994), two defendants, Jos Gonzlez and Domngo
Daz Ortiz, appeal the district court's refusal to entertain their
belated motions for summary judgment  (in which each defendant
sought to assert a qualified immunity defense).  We find no abuse
of discretion in the lower court's ruling and therefore affirm.
                               I.
                           Background
 This is our second encounter with the pretrial
proceedings in this action.  Having sketched the factual
antecedents in our earlier opinion, see Daz v. Martnez, 112 F.3d
1, 2-3 (1st Cir. 1997), we abbreviate the tale here.
 On September 8, 1993, while on guard duty at a public
housing project, Miguel Daz-Martnez (Officer Daz), a member of
the Puerto Rico police force, shot two siblings, killing one and
wounding the other.  After the shooting, the wounded sibling and
other members of the deceased sibling's family brought suit under
section 1983, naming as defendants Officer Daz and a cadre of
upper-echelon police officials.  They alleged in substance that
Officer Daz was a rogue cop who had a lengthy history of aberrant
behavior, much of which involved violence and the wanton use of
firearms.
 During and after pretrial discovery, the plaintiffs
revised their complaint several times, culminating in the filing of
a third amended complaint on November 1, 1995.  That pleading
omitted certain original defendants and named a cluster of new
defendants, including the appellants (both of whom are ranking
police officers).  The plaintiffs served Gonzlez on December 18,
1995, and served Daz Ortiz the next day.  The third amended
complaint averred that the appellants each had supervisory
authority over Officer Daz on and before the day of the shooting,
and that, had they not been deliberately indifferent to innocent
citizens' rights, they would have ensured that Officer Daz was not
placed on duty in a high-tension area with a firearm at the ready.
 Service of the summonses and complaints obligated the
appellants to respond within 20 days, see Fed. R. Civ. P.
12(a)(1)(A), but neither of them complied.  In hopes of galvanizing
the appellants into action, the plaintiffs hand-delivered letters
on February 27, 1996, that advised the appellants to answer the
complaint on pain of default.  The Puerto Rico Department of
Justice (DOJ), statutorily charged to provide the appellants with
counsel, see P.R. Laws Ann. tit. 32,  3090 (1990), appeared in the
district court on March 5, 1996, and requested an extension of time
to file an answer on Gonzlez's behalf.  Judge Laffitte gave
Gonzlez an additional five weeks, through April 12, 1996, to
respond.  That deadline came and went without any further
submission on Gonzlez's part.  He finally answered the complaint,
through counsel, on July 10, 1996.
 Daz Ortiz was even more cavalier.  For over eight
months, he did not appear, either personally or by counsel.  During
that interval, he neither responded to the complaint nor sought an
extension of time for doing so.  He finally filed an answer,
through counsel, on August 28, 1996.
 In the meantime, much had transpired.  As is typical in
cases of this genre, the district court, acting pursuant to Fed. R.
Civ. P. 16, had issued a series of case-management orders.  Under
those orders, the court originally set February 12, 1996, as the
deadline for filing dispositive motions.  Because the plaintiffs
amended their complaint to add new parties, the court extended the
deadline first to April 25, 1996, and eventually to May 15, 1996.
 The appellants, who were fully chargeable with knowledge
of what the docket disclosed, see Latham v. Wells Fargo Bank, N.A.,
987 F.2d 1199, 1201 (5th Cir. 1993), blithely ignored these
deadlines.  When they finally deigned to answer the complaint, each
simultaneously filed a motion for summary judgment based on a claim
of qualified immunity.  Not surprisingly, Judge Laffitte refused to
entertain these tardy motions because they violated his scheduling
order.  The judge nonetheless ruled that the appellants could raise
their qualified immunity defenses at trial.  Little mollified,
Gonzlez and Daz Ortiz appealed.
                              II.
                     Appellate Jurisdiction
 As a threshold matter, we contemplate our jurisdiction to
hear these appeals.  The qualified immunity doctrine shields public
officials sued in their individual capacities in section 1983 cases
from liability "insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982).  Generally speaking, a law-based (as
distinguished from a fact-based) denial of a defendant's claim of
qualified immunity, asserted by way of a pretrial motion for brevisdisposition, is immediately appealable.  See Behrens v. Pelletier,
116 S. Ct. 834, 838-39 (1996); Johnson v. Jones, 115 S. Ct. 2151,
2159 (1995); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).  The
appellants argue that the district court's refusal to consider
their motions for summary judgment is tantamount to the law-based
rejection of a claim of qualified immunity, and thus appellate
jurisdiction over their interlocutory appeals is proper.
 Of course, the district court did not deny the
appellants' motions for summary judgment.  While the result of the
refusal to entertain the motions is in one sense the same as an
outright merits-based denial   the appellants must stand trial    
the district court's action was in reality a case-management order,
and such orders ordinarily are not amenable to interlocutory
appeal.  See In re Recticel Foam Corp., 859 F.2d 1000, 1003 (1st
Cir. 1988).  Moreover, the case law presents some support for a
conclusion that these appeals are not justiciable here and now.  
See Edwards v. Cass County, 919 F.2d 273, 275-76 (5th Cir. 1990);
Kennedy v. City of Cleveland, 797 F.2d 297, 298, 303-04 (6th Cir.
1986).
 These uncertainties grow pale, however, in the light of
circuit precedent.  We have held that a defendant may bring an
interlocutory appeal from a district court's refusal to entertain
an untimely pretrial motion that raises a qualified immunity
defense.  See Valiente v. Rivera, 966 F.2d 21, 23 (1st Cir. 1992)
(per curiam); Zayas-Green v. Casaine, 906 F.2d 18, 23 (1st Cir.
1990).  It is trite but true that, in a multi-panel circuit, newly
constituted panels are, for the most part, obligated to follow
earlier  panel decisions closely on point.  See Williams v. Ashland
Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995) (collecting cases and
enumerating exceptions).  Because the record reveals no principled
basis for a departure from this salutary principle, we adhere to
prior circuit precedent and hold that we have jurisdiction over
these appeals.
                              III.
              The Appellants' Assignment of Error
 The Civil Rules endow trial judges with formidable case-
management authority.  This authority specifically includes   
indeed, mandates   setting deadlines for the filing of pretrial
motions.  See Fed. R. Civ. P. 16(b)(2).  In exercising this power,
"[t]rial judges enjoy great latitude," Jones v. Winnepesaukee
Realty, 990 F.2d 1, 5 (1st Cir. 1993), and a litigant who ignores
a case-management deadline does so at his peril, see, e.g., Fed. R.
Civ. P. 16(f) (authorizing sanctions for noncompliance).  We have
made it clear that district courts may punish such dereliction in
a variety of ways, including but not limited to the preclusion of
untimely motions for summary judgment based on allegations of
qualified immunity.  See Guzmn-Rivera v. Rivera-Cruz, 98 F.3d 664,
668 (1st Cir. 1996).
 Where, as here, a range of sanctions is reasonably
thought to be available, we acknowledge the trial judge's special
coign of vantage and give him a wide berth to determine what
sanction responds most aptly to a particular infraction.  See id.;
Jones, 990 F.2d at 5.  Consequently, we examine the trial judge's
case-management decisions under an abuse of discretion rubric,
mindful that a disgruntled litigant "bears a formidable burden in
attempting to convince the court of appeals that the lower court
erred."  United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st
Cir. 1993).
 In this instance, the appellants are dealing from
weakness.  Despite the fact that other defendants who were first
impleaded by means of the third amended complaint managed to file
summary judgment motions on time, the appellants did not; they
docketed their motions for summary judgment eight and fifteen
weeks, respectively, after the (twice-extended) deadline for filing
dispositive motions had expired.  In the interim, they made no
attempt to request a modification of the applicable deadline.  
Moreover, they proffered no compelling explanation for their
delinquency.
 To be sure, upon filing their motions   a step that they
took without first seeking leave of court   the appellants strove
to shift the blame by complaining loudly about the DOJ's lack of
diligence in providing counsel.  Yet, this complaint, even if true,
does not advance the appellants' cause.  Attorneys represent
clients, and as a general rule an attorney's blunder binds her
client.  See  Link v. Wabash R.R. Co., 370 U.S. 626, 633-36 (1962);
Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir. 1992).  What
is more,  litigants have an unflagging duty to comply with clearly
communicated case-management orders, and this duty extends even to
litigants who proceed pro se.  See McNeil v. United States, 508
U.S. 106, 113 (1993); Downs v. Westphal, 78 F.3d 1252, 1257 (7th
Cir. 1996).
 We think that, at the very least, the appellants should
have appeared in response to the summonses and kept the court
abreast of any difficulties that they were encountering with regard
to legal representation.  This modicum of attention might have
permitted the district court to consider whether good cause existed
to modify its scheduling order.  See Fed. R. Civ. P. 16(b).  
However, the appellants' show of indifference sealed off this
avenue of relief.  See Johnson v. Mammoth Recreations, Inc., 975
F.2d 604, 609 (9th Cir. 1992) ("[C]arelessness is not compatible
with a finding of diligence and offers no reason for a grant of
relief.").  In context, then, the problems  that the appellants
allegedly experienced in obtaining counsel from the DOJ do not
shield them from the condign consequences of their unilateral
decision to boycott the district court's time line.
 In a Briarean effort to save the day,  the appellants
shift gears and urge that the district court abused its discretion
by failing to include three relevant factors in its decisional
calculus.  See, e.g., Henry v. INS, 74 F.3d 1, 4 (1st Cir. 1996)
(noting that a district court can abuse its discretion "by
neglecting to consider a significant factor that appropriately
bears on the discretionary decision").  These assertions comprise
considerably more cry than wool.
 First, the appellants maintain that the district court
allowed the plaintiffs to implead them in violation of the court's
own case-management orders, and that what is sauce for the
plaintiffs' goose should be sauce for the defendants' gander.  This
claim is baseless.  The plaintiffs filed their third amended
complaint, which added the appellants as defendants, on November 1,
1995   the last allowable day for doing so under the district
court's schedule.
 Second, the appellants argue that their summary judgment
motions are so stunningly meritorious that the district court
should have granted them regardless of any procedural
irregularities.  This argument puts the cart before the horse.  So
long as the district court properly refused to entertain the
motions, it had no need to consider the underlying merits.  We
hasten to add, moreover, that our perusal of the appellants'
arguments in support of their claim of qualified immunity suggests
that they may well be reading their own submissions through rose-
colored glasses.
 The most forceful of the appellants' arguments prescinds
from Valiente, in which we held that a district court abuses its
discretion by denying leave to move for summary judgment because
the motion comes "on the eve of trial" if, in fact, the trial has
been continued.  966 F.2d at 23.  The appellants posit that because
the plaintiffs consented to a stay of  proceedings while this court
reviews the lower court's denial of other defendants' immunity-
based summary judgment motions, the appellants' conduct, though
dilatory, did not jeopardize a trial date (and, therefore, is
excusable).  The premise on which this argument rests is true as
far as it goes, but it does not go very far.
 Here, unlike in Valiente, the district court did not
predicate its decision to eschew consideration of the appellants'
motions on a perceived need to start trial on a specific date, but,
rather, did so as a sanction for the appellants' failure to comply
with the scheduling order.  Case-management authority enables the
court to shepherd cases towards fair, yet efficient, resolution.  
See In re San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956,
965 (1st Cir. 1993); 3 James Wm. Moore et al., Moore's Federal
Practice  16.02, at 16-22 (3d ed. 1997).  Such empowerment not
only permits the court to grant  firm trial dates, but also permits
it to group dispositive motions, forecast the likely effect of
interlocutory appeals, and otherwise ensure that a case moves
forward in a logical, reasonably expeditious progression.  
Litigants could complicate exponentially the efficacious management
of crowded dockets if left free to engage in the kind of dilatory
behavior exhibited by the appellants as long as no firm trial date
was in prospect.  See Guzmn-Rivera, 98 F.3d at 668.
 We need go no further.  Given the baldness of the
appellants' transgressions, the potential prejudice to the
plaintiffs and to the orderly administration of the court's docket
caused by the late filings, and the need to deter such conduct, we
think the district court's refusal to entertain the appellants'
motions for summary judgment is a concinnous sanction, well within
the court's discretion.  See Fed. R. Civ. P. 16(f); Jones, 990 F.2d
at 5 n.9.
 In reaching this conclusion, we do not denigrate the
important purpose served by the qualified immunity doctrine.  
Nonetheless, it is (or should be) evident that a public official's
right to raise a qualified immunity defense is commensurate with
his responsibility to do so diligently and in keeping with the
trial court's lawful case-management orders.  See Kennedy, 797 F.2d
at 301.  The appellants' flagrant breach of this duty amply
justifies the district court's carefully balanced rejoinder
(precluding a belated pretrial sortie but leaving the appellants
free to raise the qualified immunity defense at trial).

Affirmed.

</body>

</html>