USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2042 WHITNEY BROS. CO., ET AL., Plaintiffs - Appellees, v. DAVID C. SPRAFKIN AND JOAN BARENHOLTZ, TRUSTEES OF THE BERNARD M. BARENHOLTZ TRUST, ET AL., Defendants - Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _____________________ James P. Bassett, with whom Orr and Reno, P.A. and Samuel M. ________________ __________________ _________ Sprafkin, were on brief for appellants. ________ James R. Muirhead, with whom Peter D. Anderson and McLane, __________________ __________________ _______ Graf, Raulerson & Middleton Professional Association, were on _______________________________________________________ brief for appellees. ____________________ July 20, 1995 ____________________ TORRUELLA, Chief Judge. At issue here is whether the TORRUELLA, Chief Judge. ___________ Defendants were properly required to pay the Plaintiffs' attorneys' fees. Plaintiffs/appellees are Whitney Brothers Company ("Whitney Brothers") and Griffin M. Stabler, Whitney Brothers' president, chief executive officer and director. Defendants/appellants, David C. Sprafkin and Joan Barenholtz, are the trustees of the Bernard M. Barenholtz Trust, Whitney Brothers' majority shareholder. In the underlying litigation, Plaintiffs sued to compel Defendants to sell their stock in Whitney Brothers pursuant to a written buy/sell contract. After two years of litigation, the district court ordered the sale at Defendants' asking price and held that the Plaintiffs were entitled to satisfy the purchase price with a prepayable promissory note. The district court also __________ concluded that the Defendants had resisted their obligations under the buy/sell agreement in bad faith, and accordingly used its inherent powers to shift the Plaintiffs' attorneys' fees. The district court predicated its bad faith finding on, inter _____ alia, the Defendants' continuous insistence that the purchase ____ price was not prepayable. On appeal, we reversed the district court's judgment with respect to prepayment. The Defendants filed a Motion to Reconsider the imposition of attorneys' fees in light of our reversal on the prepayability of the note. The district court held that the fee award was still justified but amended it to exclude fees earned in connection with the prepayment issue. -2- Defendants now appeal. For the following reasons, we vacate that portion of the court's order imposing fees and remand for further proceedings consistent with this opinion. BACKGROUND BACKGROUND Whitney Brothers is a New Hampshire corporation that produces wooden learning materials. Bernard Barenholtz acquired 62.6% of the company's outstanding shares in 1969. Ten years later, he transferred these shares to the Bernard M. Barenholtz Trust (the "Trust") and named himself and defendant David Sprafkin trustees. Plaintiff Griffin Stabler owned 32.7% of the shares, and his son, David Stabler, owned the remaining 4.7%. On January 27, 1987, Whitney Brothers, the trustees, and Griffin Stabler executed a written buy/sell agreement ("The Agreement"). Under The Agreement, Whitney Brothers would buy the Trust's shares within ninety days of the death of Bernard Barenholtz and buy Griffin Stabler's shares within ninety days of Stabler's death. To determine the purchase price, the parties would plug an agreed-upon appraisal into a formula to determine the purchase price. If the parties could not agree on an appraisal, they would each get their own and plug the average into the formula. The contract also provided for payment by a promissory note, with monthly installments over ten years at 10% interest per annum. The Agreement did not mention whether prepayment of the note was permissible. On February 3, 1987, Bernard Barenholtz' (and Defendants') attorney Samuel M. Sprafkin wrote a letter advising -3- Mr. Barenholtz that the promissory note should be prepayable without penalty. The district court found that the parties orally agreed to the letter's prepayment provision. Barenholtz then placed the letter in a file with the written contract. When Bernard Barenholtz died, on August 5, 1989, his daughter, defendant Joan Barenholtz, assumed his trustee position. A few days later, plaintiff Stabler and defendant Sprafkin discussed the contract's required stock sale. One of the parties asked E.F. Greene to update a past appraisal of Whitney Brothers.1 Sprafkin rejected Greene's appraisal; Whitney Brothers accepted it. Relying on Greene's appraisal, Whitney Brothers tendered to Defendants a prepayable promissory note for $1,178,000 for the stock.2 Instead of responding immediately, Defendants secured a significantly higher appraisal from Alfred Schimmel, a real estate appraiser from New York City. They then rejected Whitney Brothers' tender by letter, without mentioning the note's prepayment clause. When Stabler learned of Defendants' appraisal, he rejected it as too high. Ultimately, Plaintiffs sued to compel the transfer of the stock. Ten months later, on December 13, 1990, as part of their cross-motion for summary judgment, Plaintiffs offered to  ____________________ 1 The parties disagree over who requested the update. 2 Defendants contend that Stabler made the tender knowing that they did not accept Greene's appraisal and planned to obtain one of their own. -4- tender either $1,349,3433 immediately or, if the court found that The Agreement did not permit prepayment, that amount over ten years at 10% interest. Defendants again rejected the tender. They now contend that they rejected it because: (1) it omitted $145,000 worth of interest that had accrued since November 3, 1989, 90 days after the death of Bernard Barenholtz, and (2) it was invalid because the first option permitted prepayment, and the second option was conditioned upon a court judgment that prepayment was prohibited. Plaintiffs maintain that the Defendants continually and in bad faith resisted their obligations under The Agreement so that they could sell the stock to one of Whitney Brothers' competitors at a higher price. In response to the cross-motions for summary judgment, the district court: (1) ordered Defendants to sell their stock; (2) found that Plaintiffs were not entitled to prepay the note; and (3) decided that a trial was necessary on the issue of the stock price. See Whitney Bros. Co. v. Sprafkin, No. 90-54-S ___ __________________ ________ (D.N.H. filed June 5, 1991)(the "Summary Judgment Opinion"). After a six-day trial, the court issued an order in which it: (1) required the Plaintiffs to pay $1,349,343 for the stock;4 (2) reconsidered and reversed, sua sponte, its previous __________ order and ruled that the parties' oral agreement regarding the  ____________________ 3 This was the price calculated under the contract by plugging the average of the two appraisals into the formula. 4 The court held that the Plaintiffs were bound by their summary-judgment-motion stipulation that the stock price was $1,349,343. -5- prepayability of the note was binding and, therefore, that the Plaintiffs could pay for the stock with a prepayable promissory note; (3) ruled that interest on the note would begin to accrue when it was executed, and not before; and (4) used its inherent powers to assess attorneys' fees against the Defendants based on their bad faith conduct throughout the litigation.5 Whitney _______ Bros. Co. v. Sprafkin, No. 90-054-S, 1992 WL 686272 (D.N.H. Sept. _________ ________ 30, 1992)("the Order"). The Order cited the Defendants' refusal to accept a prepayable note despite their oral agreement to do so as one of five instances of their bad faith. On appeal (the "First Appeal"), we, inter alia, ___________ reversed the district court's judgment with respect to the prepayability of the note, holding that The Agreement precluded the Plaintiffs' efforts to prepay regardless of whether a subsequent oral agreement provided for prepayment. Whitney Bros. _____________ Co. v. Sprafkin, 3 F.3d 530 (1st Cir. 1993). ___ ________ Defendants then filed a motion asking that the court reconsider the imposition of attorneys' fees in light of our reversal on the prepayment issue. The court denied the Motion to Reconsider without a hearing,6 holding that the integrity of the court's previous bad faith finding was not damaged by this  ____________________ 5 Although the parties briefed the issue, the district court imposed the fee award without the benefit of a hearing.  6 Judge Stahl, who presided over the trial and issued the Order, requested that the matter be assigned to another judge after he was appointed to the Court of Appeals for the First Circuit. Judge DiClerico presided over the remainder of the case, including the Defendants' Motion for Reconsideration. -6- Court's reversal on the prepayment issue. The court did, however, amend the fee award to exclude all fees earned in connection with the prepayment issue. Defendants now appeal. STANDARD OF REVIEW STANDARD OF REVIEW We review a district court's imposition of sanctions under its inherent power for an abuse of discretion, Chambers v. ________ NASCO, 501 U.S. 32, 55 (1991), giving recognition to the premise _____ that the "district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact- dependent legal standard" that informs its determination as to whether sanctions are warranted. Cooter & Gell v. Hartmarx _______________ ________ Corp., 496 U.S. 384, 402 (1990). We nonetheless remain mindful _____ that a "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. at 405. ___ DISCUSSION DISCUSSION The issue before us is whether the district court's imposition of attorneys' fees constitutes an abuse of discretion, particularly in light of our reversal on the prepayment issue. The Plaintiffs allege that the Defendants raised frivolous defenses in bad faith solely to avoid their obligations under The Agreement so that they could sell the securities to one of Whitney Brothers' competitors at a higher price. Accordingly, the Plaintiffs contend, the fee award is appropriate despite our reversal on the prepayment issue. The Defendants maintain that they resisted the Plaintiffs' attempts to implement The Agreement -7- in good faith because, inter alia, (1) the Plaintiffs insisted ___________ that the note was prepayable, and (2) they were legitimately concerned that the Plaintiffs were both financially and legally incapable of fulfilling their obligations under The Agreement. The Defendants further maintain that our reversal on the prepayment issue completely justifies their position throughout the course of the litigation, and that the district court therefore abused its discretion in assessing attorneys' fees against them.  With regard to the original finding of bad faith, the district court stated the following: A retrospective look at this litigation reveals Defendants' bad faith in resisting their obligation to perform under The Agreement. In support of its bad faith ruling, the Court makes the following observations and findings: 1. In initially resisting their obligation under The Agreement, Defendants relied primarily upon the argument that Plaintiffs were not financially able to perform. However, Defendants advanced no expert opinion either to support their claim or to counter the opinion of Plaintiffs' expert that Plaintiffs were indeed ready and able to perform. Moreover, The Agreement itself certainly did not explicitly contemplate the sort of financial "veto power" Defendants attempted to assert in the earlier stages of this case. Finally, an examination of the financial data advanced by Plaintiffs' amply supports a finding that Plaintiffs were, in fact, in a position to perform under the Agreement; 2. Samuel Sprafkin, despite his fiduciary obligation to Whitney as a director thereof, actively opposed -8- implementation of the oral agreement that Plaintiffs' obligation under The Agreement would be prepayable without penalty; 3. Both David and Samuel Sprafkin testified that Samuel Sprafkin did not speak with E.F. Greene during the course of the August 10, 1989, meeting. In light of all the evidence in this case, such testimony simply was not credible; 4. Both David and Samuel Sprafkin testified that prior to being shown a copy of The Agreement during the August 10, 1989, meeting at the Barenholtz' home, they had forgotten about it. Such testimony simply was not credible; 5. Defendants' sole reason for proceeding to trial after the Court had ruled on the parties' cross-motions for summary judgment was to seek the utilization of the Schimmel appraisal in implementing Article Three of The Agreement. The Schimmel appraisal was, however, so lacking in factual foundation that it would not have assisted the trier of fact on the issue of the securities' value. It thus would have been ruled inadmissible under Rule 702, Fed. R. Evid., were the price issue not resolved at the summary judgment stage of these proceedings. (In so stating, the Court adopts in toto the argument set forth in _______ the Plaintiff's Motion to Strike the Testimony and Report of Alfred E. Schimmel.) Nonetheless, despite both Defendants' acknowledged duty as trustees to advance a competent appraisal, see Tr. VI, 118, and the obvious inadequacy of the Schimmel appraisal, Defendants continued, indeed continue, to endorse the Schimmel appraisal. While perhaps none of the foregoing facts and findings, standing alone, would persuade the Court to award Plaintiffs' all of their fees, the sum total of the delineated behavior convinces the Court -9- that such a fee award is appropriate. Indeed, the record overwhelmingly indicates that Plaintiffs should never have had to institute this action to enforce their clear right to purchase the disputed securities pursuant to The Agreement. [FN17]7 Accordingly, the Court rules that Plaintiffs are entitled to recover their attorneys' fees from Defendants. . . .[FN18]8 Whitney Bros. Co., No. 90-054-S, 1992 WL 686272 at *7.  _________________ We must first analyze whether our reversal on the prepayment issue significantly affects the overall integrity of the fee award. The order states that "the record overwhelmingly indicates that Plaintiffs should never have had to institute this action to enforce their clear right to purchase the disputed securities pursuant to The Agreement." It enumerates five instances of alleged bad faith, including the Defendants'  ____________________ 7 Footnote 17 states: "At minimum, Defendants could have accepted the December 13, 1990, Tender, which adopted Defendants' purchase price, and terminated this costly litigation." Whitney _______ Bros. Co., No. 90-054-S, 1992 WL 686272 at n.17. _________ 8 Footnote 18 states: The Court's decision to hold Defendants responsible for all of Plaintiffs' fees in this case has been made with due consideration of the fact that the price issue should have been disposed of at summary judgment. However, the Court's ruling on fees is necessarily informed by the bad faith Defendants exhibited throughout the six-day trial. In light of Defendants' bad faith, the Court finds that it would be patently unfair to require Plaintiffs to pay any amount of the attorneys' fees in this case. Id. at n.18. ___ -10- continuous insistence that the debt was not prepayable, and clearly states that the fee award is predicated on the "sum total of the delineated behavior."9 Accordingly, because our reversal on the prepayability issue undermines the fee award, we therefore must determine whether the other enumerated instances of bad faith are sufficient to support the fee award. We begin by emphasizing that the district court assessed the fees pursuant to the court's "inherent power" to "manage [its] own affairs." Link v. Wabash R. Co., 370 U.S. 626, ____ _____________ 630-31 (1962). It is beyond serious dispute that a district court may use its inherent powers to assess attorneys' fees against a party that has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" Chambers, 501 U.S. at 45- ________ 46 (quoting Alyeska Pipeline Service Co. v. Wilderness Society, _____________________________ __________________ 421 U.S. 240, 258-59 (1975)); see also Roadway Express, Inc. v. ________ ______________________ Piper, 447 U.S. 752, 765-66 (1980) (recognizing "bad faith" _____ exception to general rule that federal courts cannot ordinarily make fee-shifting awards); Jones v. Winnepesaukee Realty, et al, _____ ___________________________ 990 F.2d 1, 3 (1st Cir. 1993)(citations omitted). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at ________ 44 (citation omitted). Accordingly, a court's inherent power to shift attorneys' fees "should be used sparingly and reserved for egregious circumstances." Jones, 990 F.2d at 3. Significantly, _____  ____________________ 9 As we noted above, the district court took this statement into consideration by reducing the fee award to the extent that the fees were attributable to the prepayment issue. -11- we have held that a district court exercising its inherent powers in this fashion must describe the bad faith conduct with "sufficient specificity," accompanied by a "detailed explanation of the reasons justifying the award." See Gradmann & Holler v. ___ _________________ Continental, 679 F.2d 272, 274 (1st Cir. 1982) (vacating fee ___________ award for district court's failure to provide a sufficiently detailed justification)(citing F.D. Rich Co. v. United States ex _____________ ________________ rel. Industrial Lumber Co., 417 U.S. 116, 129 (1974)); cf. ____________________________ ___ Jones, 990 F.2d at 3-4 (holding that the district court's _____ "specific, meticulously detailed finding of bad faith" was supportable on appeal). These principles, when combined with the effect of our reversal on the prepayment issue, render the order assessing fees unsustainable. The district court predicated its first finding of bad faith on the Defendants' failure to advance expert testimony in support of their earlier insistence that the Plaintiffs were financially incapable of performing. We agree that a district court could find bad faith where a party maintains an unfounded action or defense without any reasonable hope of prevailing on merits. See Chambers, 501 U.S. 32; see also Perichak v. ___ ________ _________ ________ International Union of Elec. Radio & Machine Workers, Local 601, _________________________________________________________________ AFL-CIO, 715 F.2d 78, 83 (1978) (awarding fees because plaintiff _______ brought action without "any reasonable prospect of prevailing on the merits"); Nemeroff v. Abelson, 704 F.2d 652, 659-60 (2d Cir. ________ _______ 1983) (affirming an award of fees based on a finding of bad faith in maintaining an action after it became clear that the claim was -12- no longer colorable). Nevertheless, the facts here are not so clear. In their cross-motion for summary judgment, the Defendants advanced eight grounds for resisting their obligations under the Agreement. The stated grounds included the following: (1) Whitney Brothers' financial condition would not have permitted it to make the installment payments; (2) Whitney Brothers' funds were restricted because its bank had liens on the company's assets; and (3) payment of the note would be unlawful because, under New Hampshire corporate law, a corporation can repurchase its own shares only with unrestricted surplus. Although the district court's Summary Judgment Opinion holds that none of the stated grounds preclude the stock repurchase contemplated by the Agreement, neither it nor the subsequent order imposing fees explains how these defenses are frivolous or why they were objectively or subjectively unreasonable at the time they were advanced. Cf. Blue v. U.S. Dept. of Army, 914 ___ ____ ___________________ F.2d 525, 544 (4th Cir. 1990)(finding that district court's claim-by-claim description of the frivolous nature of the plaintiffs' complaint demonstrated clearly that their "widespread charges of racial discrimination [were leveled] without any regard for the truth . . . in order to harass and embarrass the personnel at Fort Bragg"). The third and fourth instances of bad faith were predicated on the district court's belief that both David and Samuel Sprafkin had offered testimony that "simply was not credible." We have no doubt that when a party has materially -13- perjured himself, this, standing alone, is sufficient grounds for finding bad faith. See Chambers, 501 U.S. at 46 (noting that the ___ ________ "inherent power extends to a full range of litigation abuses); see also Perichak, 715 F.2d at 84-85 & n.9 (3d Cir. 1983) _________ ________ (holding that the defendant's "'materially false statements [made] under oath' are, having been critical to the success of his case, alone, enough to support a finding of bad faith"); Carri n v. Yeshiva University, 535 F.2d 722 (2d Cir. 1976) _______ __________________ (affirming fee award after a civil rights bench trial where the court found that plaintiff's testimony was an "unmitigated tissue of lies"). However, "[a] factfinder's decision that one party's version of the events is more credible than the other party's is, without more, insufficient to justify an award of attorneys' fees . . . ." Roth v. Pritikin, 787 F.2d 54, 58 (2d Cir. ____ ________ 1986)(discussing fee awards under the Copyright Act); see also ________ Blue, 914 F.2d 544 (noting that "not every instance in which a ____ district court credits one side's witnesses over another's is an occasion for sanctions"). Here, the district court merely stated that the Sprafkins' testimony, "[i]n light of all the evidence in this case, . . . simply was not credible." It set forth no explanation for this conclusion. We think that a district court cannot predicate the use of its inherent powers on a mere conclusory statement that the witnesses were not credible. Cf. ___ Blue, 914 F.2d at 544 (holding that although the fee award was ____ assessed against plaintiffs in a complex civil rights suit, it -14- was proper because the district court's order imposing fees meticulously describes each instance of perjury and bad faith). Because the district court neither explained why it concluded that the Sprafkins had perjured themselves nor explained why any allegedly untrue statements were material, we cannot say that the bad faith conduct was described with "sufficient specificity" or accompanied by a "detailed explanation of the reasons justifying the award." See Gradmann & Holler, 679 F.2d at 274. We ___ ___________________ therefore conclude that the district court abused its discretion when it based the fee award on the unexplicated conclusion that the Sprafkins "simply [were] not credible." The court predicated its fifth finding of bad faith on the Defendants' endorsement of the Schimmel appraisal. In its order, the court found the Schimmel appraisal to be completely lacking in factual foundation, adopting the Plaintiffs' contention that "the trustees and their attorney found someone in Mr. Schimmel who would say anything they wanted him to say."10 The Order states that the Defendants proceeded to trial for the sole purpose of advancing the Schimmel appraisal "despite [their] acknowledged duty as trustees to advance a competent appraisal." The record fully supports this finding, indicating that the Schimmel appraisal relied upon inflated rental and capitalization rates and disregarded the fact that the Whitney Brothers facility  ____________________ 10 The district court's fee order adopted in toto the ________ Plaintiffs' arguments set forth in their Motion to Strike the Testimony of Alfred E. Schimmel. -15- was located in an "A-2 flood zone."11 The record also supports the district court's finding that Schimmel neither associated with a "qualified local appraiser" nor spent "sufficient time to understand the nuances of the local market" as required by the Appraisal Foundation's Standards of Professional Practice and Conduct. Moreover, Michael Monks, a local industrial real estate broker testified that the Sprafkins were aware of the infirmities infecting the Schimmel opinion before they advanced it at trial. Consequently, we find that the district court's fifth finding of bad faith was well grounded in the record and set forth with sufficient particularity and is accordingly sustainable on appeal. The district court's fee order indicated that it predicated the fee award on the cumulative effect of five specific instances of alleged bad faith and its finding that the "record overwhelmingly indicates that Plaintiffs should never have had to institute this action to enforce their clear right to purchase the disputed securities pursuant to The Agreement." Although we affirm the fifth finding of bad faith, the First Appeal obviated the second, and further examination of the order seriously undermines the facial validity of the remaining three. Moreover, we do not agree that the record overwhelmingly indicates that the Defendants improperly forced the Plaintiffs to  ____________________ 11 Mr. Green testified that the area floods not only seasonally, but also during periods of heavy rain. We think the district court was entitled to find that this data would have been considered in any competent appraisal. -16- file suit. As we noted above, neither the district court's Summary Judgment Opinion nor the Order explains why the defenses maintained by the Defendants were objectively or subjectively unreasonable when asserted. Perhaps more significantly, the Defendants ultimately prevailed on the prepayment issue, apparently vindicating their rejection of the Plaintiffs' initial tenders. This case involves a complex set of facts and events that occurred both in and out of court. In the end, we think the district court's cursory explanation of the bases for the fee award is simply inadequate, particularly in light of the fact that no hearing was held on the issue. We remain cognizant of the Supreme Court's pronouncement that appellate tribunals should give deference to the district courts' determinations on sanctions in order to "streamline the litigation process by freeing the appellate courts from the duty of reweighing evidence . . . already weighed and considered by the district court." Cooter & Gell, 496 U.S. ______________ at 404. In the context of a court's inherent powers, however, this deference is only proper where the district court has explained its actions with sufficient detail. Accordingly, we find that the combined effect of our reversal on the prepayment issue and the district court's failure to adequately set forth its justifications render its imposition of attorneys' fees an abuse of discretion. We therefore vacate the district court's fee order and remand so that the district court can make specific findings consistent with this opinion. -17- Vacated. _______ -18-