Moore v. Medeva, et al.          CV-01-311-M    04/09/03
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Linda E. Moore and
Wallace Moore,
      Plaintiffs

      v.                                Civil No. 01-311-M
                                        Opinion No. 2003 DNH 060
Medeva Pharmaceuticals, Inc.,
a/k/a Celltech Pharmaceuticals, Inc.,
and Celltech Pharmaceuticals Ltd.,
      Defendants


                         **O R D E R**


      After receiving a flu vaccine allegedly manufactured,

distributed, and/or sold by defendants, Linda Moore says she

contracted a "paralytic ailment known as Guillain-Barre Syndrome

and other consequential and incidental ailments."  Amended

complaint, para. 8.  Pending before the court are: (1) a motion

to quash service or, in the alternative, to dismiss (document no.

42), filed by defendant Celltech Pharmaceuticals, Ltd.

("Celltech"); and (2) a motion in limine to exclude the use of

inadvertently produced documents and to compel their return

(document no. 36), filed by defendant Medeva Pharmaceutical,

Inc., a/k/a CellTech Pharmaceuticals, Inc. ("CPI").

**Discussion**

I.    Celltech's Motion to Quash.

Celltech moves to quash service or, in the alternative, to dismiss all claims against it, saying plaintiffs' efforts to serve it on or about September 18, 2002, failed to comply with the governing provisions of federal and international law. Subsequently, however, plaintiffs re-served Celltech, seemingly in accordance with the requirements of federal law and the Hague Convention. See Return of service as to defendant Celltech Pharmaceuticals Ltd. (document no. 56).

In light of the fact that plaintiffs appear to have properly served Celltech (Celltech has not challenged that service and has filed an answer), Celltech's motion to quash service or, in the alternative, to dismiss is denied as moot.

II.   CPI's Motion in Limine and to Compel.

A.    Background.

CPI seeks the return of a three-page document it claims was inadvertently given to plaintiffs during the course of discovery, arguing:

> On April 17, 2002, CPI produced a CD and approximately four thousand pages of documents (which filled two bankers' boxes) in response to Plaintiffs' Request for Production of Documents. Prior to producing these documents, counsel for CPI extricated those documents which were either non-responsive to Plaintiffs' document request, subject to the attorney-client privilege or subject to the attorney-work product doctrine. Counsel for CPI created a [privilege] log which listed those documents that were withheld. Unfortunately, three pages (bates-stamped CE 003100 - CE 003102) were attached behind a fax cover sheet (bates-stamped CE 003099) and were inadvertently overlooked as part of the privilege review. These pages were inadvertently disclosed to Plaintiffs as part of the document production made on April 17, 2002.

CPI's memorandum (document no. 36) at 1-2 (citations omitted). The three pages inadvertently produced during discovery are an opinion letter dated September 23, 1996, addressed to Bruce Simpson, of Medeva Pharmaceuticals Manufacturing, Inc. ("MPMI") (not a party to this litigation) and authored by an attorney at the New York law firm of Richards & O'Neil, LLP (the "opinion letter").

According to CPI, from approximately 1996 through 1999, "MPMI, Medeva Americas, Inc., and Medeva Pharmaceutical, Inc. ("MPI") were affiliate divisions in the United States under Medeva PLC which was headquartered in the United Kingdom." CPI's

3

memorandum at 8.[1]  During that time, Attorney Helen Wiley

performed legal work for those three entities.  Id.   And, in

1997, Evans Medical Limited ("Evans"), which CPI says was another

of its "affiliates," manufactured the influenza vaccine.[2]

---

[1]     Parenthetically, the court notes that it is entirely
unclear whether the defendant "Medeva Pharmaceuticals, Inc.,
a/k/a Celltech Pharmaceuticals, Inc.," (referenced in CPI's
memorandum as "CPI") is legally distinct from "Medeva
Pharmaceuticals, Inc." (referenced in CPI's memorandum as "MPI").
The record does, however, suggest that, in 1999, Medeva
Pharmaceuticals, Inc. may have merged with, or changed its name
to, or was acquired by Celltech Pharmaceuticals, Inc.  See
Deposition of David Engelberg at 10 (attached to CPI's
memorandum).

[2]     The relationships between the various entities
referenced in the parties' papers is, to say the least, not
readily apparent.  And, unfortunately, CPI's memorandum does not
disclose those relationships with the greatest of precision.
According to CPI, "the influenza flu vaccine (the "Vaccine")
referenced [in plaintiffs'] interrogatories for the year 1998 was
manufactured in the United Kingdom by Medeva Pharma Limited, a
corporation organized under the laws of the United Kingdom.
Medeva Pharma Limited was formerly known as Evans Medical
Limited.  The name change to Medeva Pharma Limited occurred on
July 6, 1998.  Medeva Pharma Limited merged into Celltech
Pharmaceuticals, Ltd. on April 2, 2001.  Medeva Pharma Limited
has since sold the assets related to the manufacture of the
Vaccine to Evans Vaccines Ltd. in October, 2000.  Evans Vaccines
Ltd. is an unrelated company to Medeva Pharma Limited and [CPI]."
CPI's Answers to Plaintiffs' Interrogatories, Exhibit 2 to CPI's
memorandum.  See also CPI's memorandum at 9 n. 3 ("Medeva Pharma
Limited [formerly known as Evans Medical Limited] merged into
Celltech Pharmaceuticals, Ltd. on April 2, 2001.  On September 9,
2002, this Court granted Plaintiffs' Motion to Amend their
Complaint to add Celltech Pharmaceuticals, Ltd. as a defendant in
this case.  As such, Evans is now essentially a defendant in this
case.").

In October of 1997, Attorney Wiley faxed a copy of the opinion letter to representatives of Evans (subsequently known as Medeva Pharma Limited and now subsumed within CPI), Medeva PLC, and "Malissa Ritchie, Stringer Saul."[3]  According to CPI:

> Although MPI [presumably, the predecessor-in-interest to CPI] was no longer involved in the chain of distribution for the Vaccine, in 1997, Attorney Wiley sought to advise the manufacturer of the vaccine, Evans, about certain steps that it ought to take vis a vis its current distributor in order to avoid liability.  All of those entities were concerned about protecting from liability those involved in the chain of distribution for the Vaccine.

CPI's memorandum at 9 (emphasis supplied).

In short, CPI claims the opinion letter is subject to the attorney-client privilege _and_ that the privilege was not knowingly and voluntarily waived, either by distributing copies to representatives of Evans, Medeva PLC, and Malissa Ritchie, or by inadvertently disclosing it to plaintiffs during the course of

---

[3]    The record does not reveal who Malissa Ritchie is or how she is connected with CPI.  It is, however, conceivable that she is an employee of Stringer Saul, a commercial law firm based in London.  See http://www.stringersaul.co.uk.  CPI does not address that issue, nor does it discuss how Attorney Wiley's decision to provide Ms. Ritchie with a copy of the opinion letter affects its assertion of the attorney-client privilege.

5

discovery. Accordingly, it says the document must be returned (and plaintiffs precluded from using copies they have made during trial). Plaintiffs, on the other hand, say CPI lacks standing to assert that the document in question is privileged, since it was addressed to a corporate entity other than CPI.[4]

B. Discussion.

Because the court's subject matter jurisdiction over this case is based upon diversity of citizenship, see 28 U.S.C. § 1332, and because plaintiffs' claims (and CPI's defense) are based upon New Hampshire law, CPI's assertion of the attorney-client privilege is also governed by New Hampshire law. Fed. R. Evid. 501. As the party asserting that the opinion letter is protected by the attorney-client privilege, CPI bears the burden of demonstrating that the privilege actually applies and, if so, that it has not been waived. See generally State v. Gordon, 141

---

[4] Plaintiffs do not assert that CPI waived the attorney-client privilege by inadvertently disclosing the opinion letter during the course of discovery. Accordingly, although there is some precedent on that subject in this circuit, see Texaco Puerto Rico v. Dept. of Consumer Affairs, 60 F.3d 867, 883 (1st Cir. 1995) ("It is apodictic that inadvertent disclosures may work a waiver of the attorney-client privilege."), the court need not address that particular issue.

N.H. 703, 705 (1997); McCabe v. Arcidy, 138 N.H. 20, 25 (1993). On this record, CPI has failed to carry that burden.

For purposes of this discussion, the court will assume, without deciding, that CPI has adequately demonstrated that: (1) CPI and MPMI are sufficiently related corporate entities to vest CPI with standing to assert the attorney-client privilege with respect to the opinion letter originally sent to MPMI; and (2) during the relevant time period, Attorney Wiley provided legal services to, among others, MPMI (the recipient of the opinion letter) and Medeva PLC (one of the entities to which she sent a copy of the opinion letter). Given those assumptions, Attorney Wiley's decision to fax a copy of the opinion letter to Medeva PLC probably did not serve to waive the attorney-client privilege. As her cover letter makes clear, she was rendering legal advice to her client, Medeva PLC. That a portion of her advice consisted of a wholesale adoption of the advice provided in the opinion letter did not, in all likelihood, operate as a waiver of the privilege attached to the letter. For the reasons set forth below, however, the court need not resolve that issue.

7

Importantly, CPI has not shown that the privilege survived Attorney Wiley's decision to forward a copy of the opinion letter to Evans (nor has it demonstrated that the act of providing Ms. Ritchie with a copy did not waive the privilege). First, CPI has not established (nor has it even alleged) that Attorney Wiley was engaged by Evans to provide legal advice.[5] And, even assuming that related corporate entities (e.g., parent corporation and subsidiary) may share legal documents without waiving any attorney-client privilege attached to those documents, CPI's assertion that Evans was, at the time, one of its "affiliates" is simply insufficient to carry its burden. In support of that claim, CPI points to the 1997 edition of the Physician's Desk reference, which says nothing more than that Evans manufactured the vaccine and was an "affiliate" of CPI. CPI's memorandum and supporting documentation is devoid of any evidence describing the nature or depth of that "affiliation." It has not, for example, provided evidence showing that, at the time of Attorney Wiley's disclosure, CPI (or MPMI) owned a controlling amount of Evans'

---

[5] That Evans was, years later, merged into CPI is of little legal significance in the context of the present dispute. The relevant focus is, of course, on Evans' legal relationship with Attorney Wiley and CPI (or MPMI) at the time that Wiley revealed the contents of the opinion letter to Evans.

8

stock or that a controlling interest in both Evans and CPI (or MPMI) was held by a third entity.  See generally Music Sales Corp. v. Morris, 52 U.S.P.Q.2d 1852, 1999 WL 974025 At *7-8 (S.D.N.Y. 1999) (generally discussing the scope of the attorney-client privilege and holding that because the two corporate defendants were entirely owned by one individual, they "operate[d], in effect, as a single entity" and, therefore, did not waive the attorney-client privilege when they shared otherwise privileged documents); United States v. AT&T Co., 86 F.R.D. 603, 616 (D.D.C. 1979) (holding that, for purposes of the attorney-client privilege, the "client" included the named defendant, as well as its wholly-owned and majority-owned subsidiaries, but not its minority-owned companies and formerly affiliated companies).  See also Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500, 503 (E.D.N.Y. 1986).

On this record, the extent of the "affiliation" between CPI and Evans at the time Wiley forwarded the letter appears to be nothing more than the fact that Evans was licensed (or otherwise authorized) by CPI to manufacture the vaccine.  And, importantly, CPI has not pointed to any legal authority suggesting that

9

documents may be passed between parties with such an attenuated relationship without waiving the attorney-client privilege; it has not, for example, developed in any meaningful way the claim that CPI and Evans shared a sufficient "identity of legal interest" to warrant application of the attorney-client privilege.

## Conclusion

For the foregoing reasons, Celltech's motion to quash service or, in the alternative, to dismiss (document no. 42) is denied. CPI's motion in limine to exclude the use of inadvertently produced documents and to compel their return (document no. 36) is also denied. Even assuming it has standing to assert the attorney-client privilege as to the opinion letter, CPI has, among other things, failed to carry its burden of establishing that the privilege was not waived when Attorney Wiley disseminated copies of the opinion letter to Evans and Ms. Ritchie.

10

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 9, 2003

cc:  John H. O'Neil, Jr., Esq.
      Jennifer Humphreys, Esq.
      Kevin H. O'Neill, Esq.
      Daniel P. Gibson, Esq.
      Peter C. Neger, Esq.
      David M. Cohen, Esq.